## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| INTEGRAL WIRELESS TECHNOLOGIES LLC, | |
| Plaintiff, | Civil Action No. 1:25-cv-00833 |
| v. | **JURY TRIAL DEMANDED** |
| SONIM TECHNOLOGIES, INC., | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Integral Wireless Technologies LLC (hereinafter, "Integral Wireless" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Sonim Technologies, Inc. ("Sonim" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,653,031 | Advance Notification of Transmit Opportunities on A Shared-Communications Channel | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7653031 |
| 2. | 7,483,878 | Generation and presentation of Search Results Using Addressing Information | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7483878 |
| 3. | 7,310,537 | Communication on Multiple Beams Between Stations | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7310537 |

|  | Patent No. | Title | Available At |
|---|---|---|---|
| 4. | 7,292,283 | Apparatus and Method for Performing Sub-pixel Vector Estimations Using Quadratic Approximations | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7292283 |
| 5. | 7,548,592 | Multiple Input, Multiple Output Communications Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7548592 |
| 6. | 7,398,408 | Systems and Methods for Waking Up Wireless LAN Devices | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7398408 |
| 7. | 7,668,258 | Systems and Methods for Transmitter Diversity Expansion | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7668258 |
| 8. | 7,586,424 | Data Coding Using an Exponent and A Residual | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7586424 |

2.     Integral Wireless seeks injunctive relief and monetary damages.

## PARTIES

3.     Integral Wireless is a limited liability company formed under the laws of Texas with a registered office address located at 512 W Martin Luther King Jr. Blvd., Unit 281, Austin, TX 78701.

4.     Sonim describes itself as a "leading provider of enterprise 5G solutions, offering a robust portfolio that includes rugged handsets, smartphones, wireless internet devices, software, services, and accessories." FORM 10-K, https://ir.sonimtech.com/sec-filings/annual-reports/content/0001603172-25-001720/0001603172-25-001720.pdf at 1 (internal pagination) (last visited May 30, 2025).

5.     Upon information and belief based on public information, Sonim is a corporation organized and existing under the laws of Delaware.

6.    Upon information and belief based on public information, Sonim maintains its corporate headquarters at 4445 Eastgate Mall, Suite 200, San Diego, CA 92121.

7.    Sonim is registered to do business in Texas. *See* TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/ at Filing No. 803577128 (showing Sonim's application for registration to do business as a foreign corporation in Texas) (last visited May 30, 2025).

8.    Upon information and belief based on public information, Sonim maintains a regular places of business in this District at 6836 Bee Cave Road, Building 1, Suite 279 Austin, TX 78746.

9.    Sonim's registered agent in Texas is C T Corporation System located at 1999 Bryan St. Suite 900 Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

10.    Integral Wireless repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

11.    This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

12.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

13.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because they have maintained established and regular places of business in this District and have committed acts of patent infringement in this District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

14.    On information and belief, Defendant Sonim is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this District, including: (A) at least part of its

infringing activities alleged herein, including its registration to do business in Texas, which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, affiliates, and/or consumers.

15.      Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offer its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

16.      For example, Defendant Sonim is registered to do business in Texas.  *See* TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/ at Filing No. 803577128 (showing Sonim's application for registration to do business as a foreign corporation in Texas) (last visited May 30, 2025).

17.      Sonim sells its products "directly to wireless carriers, through distributors and resellers and directly to end customer."  FORM 10-K, https://ir.sonimtech.com/sec-filings/annual-reports/content/0001603172-25-001720/0001603172-25-001720.pdf at 7 (internal pagination) (last visited May 30, 2025).

18.      For example, Sonim sells its products to U.S. carriers such as AT&T, T-Mobile and Verizon.  *Id.* at 39.  Then, these carriers resell Sonim's products, along with network services, to

end customers. *Id.*

19.    Upon information and belief based on public information, in Texas, there are approximately 623 AT&T stores, 583 T-Mobile stores, and 208 Verizon stores. *See* ScrapeHero, https://www.scrapehero.com/location-reports/AT%20%26%20T-USA/#:~:text=How%20many%20AT%20%26%20T%20locations,T%20locations%20in%20the%20US (last visited May 30, 2025); https://www.scrapehero.com/location-reports/T-Mobile-USA/ (last visited May 30, 2025); https://www.scrapehero.com/location-reports/Total%20by%20Verizon-USA/ (last visited May 30, 2025).

20.    Defendant is engaging in activities, including but not limited to transacting business in this District and purposefully directing its business activities, including the installation, maintenance, and use of infringing products and other related technologies in this District, and the sale or offer for sale of services and goods in this District to aid, abet, or contribute to the infringement of third parties in this District.

21.    Defendant commits acts of infringement in this District, including, but not limited to, selling, offering for sale, and using (including through testing) the Accused Products.

22.    Defendant commits acts of induced infringement in this District, including, but not limited to inducement of infringement by its parents, subsidiaries, partners, affiliates, and end-users to use the Accused Products.

23.    Defendant commits acts of contributory infringement in this District, including, but not limited to contributing to infringement by its parents, subsidiaries, partners, affiliates, and end-users through its use of the Accused Products.

24.    Such a corporate and commercial presence by Defendant Sonim furthers the development, design, manufacture, importation, distribution, and sale of Defendant's infringing

products in Texas, including in this District. Through utilization of its business segments and the direction and control of its subsidiaries and affiliates, Sonim has committed acts of direct and/or indirect patent infringement within Texas, this District, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Sonim would not offend traditional notions of fair play and substantial justice.

25.     Based on Defendant Sonim's connections and relationship with its distributors, resellers, contractors, dealers, installers, local and U.S. based national retailers, and digital distribution platforms, Sonim knows that Texas is a termination point of the established distribution channel for the sale and use of Sonim products. Sonim, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 1025467, at (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

26.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). As alleged herein, Defendant Sonim has committed acts of infringement in this District. As further alleged herein, Defendant Sonim, via its own operations and employees located there, has a regular and established place of business, in this District. Accordingly, Sonim may be sued in this district under 28 U.S.C. § 1400(b)

## THE ACCUSED PRODUCTS

27.     Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

28.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or

distributes various 802.11/BT compatible devices, 5G compatible devices, HEVC compatible device, 802.11n compatible devices, and Bluetooth compatible devices including, but not limited to, the "Accused Products" set forth below:

- Sonim server system ("Sonim System");

- 802.11/BT compatible devices ("Sonim 802.11/BT Devices") including, but not limited to:

  - XP Pro Thermal 5G, XP Pro, XP10 5G, XP10 for Verizon, XP5plus (XP5900), XP3plus 5G, XP3plus, XP400, XP3 (XP3800), XP5S, XP8, XP800, XP320, P200, Kenwood KWSA80K, RS60, and RS80.

- Sonim 5G compatible devices ("Sonim 5G Devices") including, but not limited to:

  - XP Pro Thermal 5G, XP Pro, XP10 5G, XP3plus 5G, XP400, Sonim Spot™ H500 Mobile Hotspot, Sonim H500 5G mobile hotspot for Verizon, Sonim H700 5G mobile hotspot, XP 800, XP320, and P200.

- HEVC compatible devices including ("Sonim HEVC Devices"), but not limited to:

  - XP Pro Thermal 5G, XP Pro, XP10 5G, XP10 for Verizon, XP5plus, XP3plus 5G, XP3plus, XP400, XP3 (XP3800), and XP8.

- 802.11n compatible devices ("Sonim 802.11n Devices") including, but not limited to:

  - XP Pro Thermal 5G, XP Pro, XP10 5G, XP10 for Verizon, XP5plus (XP5900), XP3plus 5G, XP3plus, XP400, USB W100 Portable Wi-Fi, Sonim Spot™ H500 Mobile Hotspot, Sonim H500 5G mobile hotspot for Verizon, Sonim H700 5G mobile hotspot, XP3 (XP3800), XP5S, XP8, Kenwood KWSA80K, XP800, XP320, P200, RS80, and RS60.

- Bluetooth compatible devices ("Sonim Bluetooth Devices") including, but not limited to:

  o Sonim XP5plus, Sonim XP10, Sonim XP5plus (No Knobs), Sonim XP3plus, Sonim XP3plus (No Camera), Sonim XP5s, Sonim XP8, XP Pro Thermal 5G, XP Pro, XP10 5G, XP10 for Verizon, XP5plus, XP3plus 5G, XP3plus, XP400, XP100, XP8, Kenwood KWSA80K.

29.     Defendant also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes. *See, e.g.*, *Sonim® Spot ™ H500 5G Mobile Hotspot Quick Start Guide*, Sᴏɴɪᴍ, available at https://sonim-tech.files.svdcdn.com/production/documents/h500_downloads/Quick-Start-Guides/Sonim_Spot_H500_QSG_English_NAM.pdf?dm=1728086144 (last visited May 30, 2025) (providing the quick installation guide for installing and using Sonim Spot H500 5G Mobile Hotspot).

30.     Defendant also import into the United States, distribute, and sell the Accused Products to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners. *See, e.g.*, *Sonim H500 5G*, Vᴇʀɪᴢᴏɴ Bᴜsɪɴᴇss, available at https://www.verizon.com/business/products/devices/mobile-hotspots/sonim-h500-5g (last visited May 30, 2025); *Sonim XP3plus*, Vᴇʀɪᴢᴏɴ Bᴜsɪɴᴇss, available at HTTPS://WWW.VERIZON.COM/BUSINESS/PRODUCTS/DEVICES/BASIC-PHONES/SONIM-XP3-PLUS/ (last visited May 30, 2025); *Sonim XP Pro 5G*, Vᴇʀɪᴢᴏɴ Bᴜsɪɴᴇss, available at https://www.verizon.com/business/products/devices/smartphones/sonim-xp-pro-5g/ (last visited May 30, 2025); Sonim XP3plus Without Camera, Vᴇʀɪᴢᴏɴ Bᴜsɪɴᴇss, available at https://www.verizon.com/business/products/devices/basic-phones/sonim-xp3-plus-without-

camera/ (last visited May 30, 2025). Those sales occur in the United States, and throughout Texas, including in this District.

31.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,653,031

32.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

33.    The USPTO duly issued U.S. Patent No. 7,653,031 (hereinafter, the "'031 patent") on January 26, 2010, after full and fair examination of Application No. 10/680,876 which was filed on October 8, 2003. *See* '031 patent at p. 1.

34.    Integral Wireless owns all substantial rights, interest, and title in and to the '031 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

35.    The claims of the '031 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that enables both an IEEE 802.11 transceiver and a Bluetooth transceiver to be employed in a single wireless telecommunication station (e.g., a device supporting a wireless telephone, personal digital assistant, etc.) without interfering on each other.

36.    The written description of the '031 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

37.    Defendant has directly infringed and continue to directly infringe one or more claims of the '031 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

38.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 15 of the '031 patent, as detailed in **Exhibit A** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,653,031).

39.    For example, Defendant, through the provision and use of the Accused Products, including, but not limited to, the Sonim 802.11/BT Devices, provides apparatuses comprising: a first air interface subsystem comprising: a receiver configured for receiving a beacon frame in accordance with a first communications protocol using a shared-communications channel wherein the beacon frame comprises a beacon interval; a processor configured for determining a transmit opportunity on the shared-communications channel wherein the transmit opportunity is based on the time at which the beacon frame is received and on the beacon interval; and an interface configured for notifying a second air interface subsystem of the transmit opportunity, wherein the second air interface subsystem comprises a first transmitter, wherein the first transmitter is configured to communicate in accordance with a second communications protocol using the shared-communications channel, and wherein the first air interface subsystem and the second air interface subsystem are both configured to be associated with a same host computer.

40.    Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Integral Wireless' patent rights.

41.    Defendant willfully blinded itself to the existence of the '031 patent and Defendant's infringement, but Defendant had actual knowledge of said patent since at least the time of receiving

the original complaint in this action.

42.     Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '031 patent by inducing others to directly infringe said claims.

43.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '031 patent by providing or requiring use of the Accused Products.

44.     Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '031 patent, including, for example, claim 15.

45.     Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

46.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '031 patent and with the knowledge that the induced acts constitute infringement.

47.     Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '031 patent.

48.     Defendant's inducement is ongoing.

49.     Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '031 patent.

50.    Defendant has contributed to the direct infringement of one or more claims of the '031 patent by their personnel, contractors, and customers.

51.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '031 patent, including, for example, claim 15.

52.    The special features constitute a material part of the invention of one or more of the claims of the '031 patent and are not staple articles of commerce suitable for substantial non-infringing use.

53.    Defendant's contributory infringement is ongoing.

54.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

55.    Defendant's direct infringement of one or more claims of the '031 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

56.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '031 patent.

57.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '031 patent.  Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to

exclude outweighs other public interests, which supports injunctive relief in this case.

58.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,483,878

59.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

60.    The USPTO duly issued U.S. Patent No. 7,483,878 (hereinafter, the "'878 patent") on January 27, 2009, after full and fair examination of Application No. 10/464,418 which was filed on June 17, 2003.  *See* '878 patent at p. 1.

61.    Integral Wireless owns all substantial rights, interest, and title in and to the '878 patent, including the sole and exclusive right to prosecute this action and enforce the '878 patent against infringers and to collect damages for all relevant times.

62.    The claims of the '878 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of computer devices by improving the generation and presentation of search results in a computer network by using addressing information.

63.    The written description of the '878 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

64.     Defendant has directly infringed one or more claims of the '878 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

65.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '878 patent, as detailed in **Exhibit B** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,483,878).

66.     As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the Sonim System, performs a method of providing search results to an end-user over a computer network, the method comprising: receiving addressing information identifying a location in a computer network; processing the addressing information to generate a keyword; performing a search on the keyword to generate a search result; and presenting an end-user the search result responsive to the keyword that is based on the addressing information in response to the end-user navigating to the location using a client computer.

67.     Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

68.     Defendant willfully blinded itself to the existence of the '878 patent and Defendant's infringement, but Defendant had actual knowledge of the '878 patent since at least the time of receiving the original complaint in this action.

69.     Defendant has also indirectly infringed the '878 patent by inducing others to directly infringe one or more claims of said patent.

70.     Defendant has induced end-users, including, but not limited to, Defendant's

customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '878 patent by providing or requiring use of the Accused Products.

71.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '878 patent, including, for example, claim 1 of the '878 patent.

72.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

73.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '878 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '878 patent.

74.    Defendant's inducement is ongoing.

75.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '878 patent.

76.    Defendant has contributed to the direct infringement of one or more claims of the '878 patent by their personnel, contractors, and customers.

77.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '878 patent, including, for example, claim 1.

78.    The special features constitute a material part of the invention of one or more of the claims of the '878 patent and are not staple articles of commerce suitable for substantial non-infringing use.

79.    Defendant's contributory infringement is ongoing.

80.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

81.    Defendant's direct infringement of one or more claims of the '878 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

82.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '878 patent.

83.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '878 patent.  Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

84.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,310,537

85.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

86.    The USPTO duly issued U.S. Patent No. 7,310,537 (hereinafter, the "'537 patent") on December 18, 2007, after full and fair examination of Application No.: 10/639,758 which was filed on August 13, 2003.  *See* '537 patent at p. 1.

87.    Integral Wireless owns all substantial rights, interest, and title in and to the '537 patent, including the sole and exclusive right to prosecute this action and enforce the '537 patent against infringers and to collect damages for all relevant times.

88.    The claims of the '537 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve cellular communication system serving mobile users or any other communication system wherein information can be communicated wirelessly on multiple beams between at least two stations.

89.    The written description of the '537 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

90.    Defendant has directly infringed one or more claims of the '537 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

91.    Defendant has directly infringed, either literally or under the doctrine of equivalents,

at least claim 26 of the '537 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,310,537).

92.    As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the Sonim 5G Devices, provides a station, comprising: antenna unit configured to receive signals transmitted from another station on multiple beams; and a controller for identifying beams based on beam identity information associated with signals received from the other station, wherein a set of beams that are geometrically distinguished from each other is selected for transmission of signals between a first station and a second station based on information of the identified beams.

93.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

94.    Defendant willfully blinded itself to the existence of the '537 patent and Defendant's infringement, but Defendant had actual knowledge of said patent since at least the time of receiving the original complaint in this action.

95.    Defendant has also indirectly infringed one or more claims of the '537 patent by inducing others to directly infringe said claims.

96.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '537 patent by providing or requiring use of the Accused Products.

97.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one

or more claims of the '537 patent, including, for example, claim 26.

98.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

99.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '537 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '537 patent.

100.    Defendant's inducement is ongoing.

101.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '537 patent.

102.    Defendant has contributed to the direct infringement of the '537 patent by their personnel, contractors, and customers.

103.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '537 patent, including, for example, claim 26.

104.    The special features constitute a material part of the invention of one or more of the claims of the '537 patent and are not staple articles of commerce suitable for substantial non-infringing use.

105.    Defendant's contributory infringement is ongoing.

106.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

107.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '537 patent.

108.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,292,283

109.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

110.    The USPTO duly issued U.S. Patent No. 7,292,283 (hereinafter, the "'283 patent") on November 6, 2007, after full and fair examination of Application No. 10/990,451which was filed on November 16, 2004.  *See* '283 patent at p. 1.

111.    Integral Wireless owns all substantial rights, interest, and title in and to the '283 patent, including the sole and exclusive right to prosecute this action and enforce the '283 patent against infringers and to collect damages for all relevant times.

112.    The claims of the '283 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes inventive components that improve motion estimation, and generating refined sub-pixel vectors for motion estimation from vector correlation values and converged vector correlation values using quadratic approximations by using apparatuses and methods including defining a minimum vector

position value of a converged vector and then determining a predetermined number of vector correlation samples around the minimum vector position value.

113.    The written description of the '283 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

114.    Defendant has directly infringed one or more claims of the '283 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

115.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '283 patent, as detailed in **Exhibit D** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,292,283).

116.    As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the Sonim HEVC Devices, performs a method to estimate a refined sub-pixel minimum vector position during a frame conversion, the method comprising: defining a minimum vector position value of a converged vector; determining a predetermined number of vector correlation samples around the minimum vector position value, the predetermined number of vector correlation samples providing a coarse correlation surface estimation of the minimum vector position value; and performing a correlation surface fitting of the predetermined number of vector correlation samples using a quadratic approximation of the coarse correlation surface estimation of the minimum value, the correlation surface fitting resulting in a refined sub-pixel minimum vector position.

117.     Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

118.     Defendant willfully blinded itself to the existence of the '283 patent and Defendant's infringement, but Defendant had actual knowledge of the '283 patent since at least the time of receiving the original complaint in this action.

119.     Defendant has also indirectly infringed one or more claims of the '283 patent by inducing others to directly infringe said claims.

120.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '283 patent by providing or requiring use of the Accused Products.

121.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '283 patent, including, for example, claim 1.

122.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

123.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '283 patent and with the knowledge that the induced acts constitute infringement.

Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '283 patent.

124.    Defendant's inducement is ongoing.

125.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '283 patent.

126.    Defendant has contributed to the direct infringement of one or more claims of the '283 patent by their personnel, contractors, and customers.

127.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '283 patent, including, for example, claim 1.

128.    The special features constitute a material part of the invention of one or more of the claims of the '283 patent and are not staple articles of commerce suitable for substantial non-infringing use.

129.    Defendant's contributory infringement is ongoing.

130.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

131.    Defendant's direct infringement of one or more claims of the '283 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

132.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '283 patent.

133.    Integral Wireless has suffered irreparable harm, through its loss of market share and

goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '283 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

134.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,548,592

135.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

136.    The USPTO duly issued U.S. Patent No. 7,548,592 (hereinafter, the "'592 patent") on June 16, 2009, after full and fair examination of Application No. 10/954,429, which was filed on September 30, 2004. *See* '592 patent at p. 1.

137.    Integral Wireless owns all substantial rights, interest, and title in and to the '592 patent, including the sole and exclusive right to prosecute this action and enforce the '592 patent against infringers and to collect damages for all relevant times.

138.    The claims of the '592 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed invention includes inventive components that improve systems and methods for transmission and reception of multiple data streams in a multiple-input, multiple-output communications channel

by optimizing the weights within a MIMO transmitter and a MIMO receiver to create and steer beam nulls, such that each transmitted signal is substantially decoupled from all other transmitted signals.

139.    The written description of the '592 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

140.    Defendant has directly infringed one or more claims of the '592 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

141.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '592 patent, as detailed in **Exhibit E** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,548,592).

142.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Sonim HEVC Devices, provides a multiple-input, multiple-output signal transmitter comprising: a plurality of signal inputs, each signal input configured to provide an input signal; a plurality of multipliers, each multiplier configured to weight an input signal with a respective value of a vector (V); a plurality of combiners, each combiner configured to combine respective ones of the plurality of weighted input signals; and a plurality of antennas, each antenna configured to transmit one of the combined weighted input signals; wherein V comprises a matrix of transmitter weighting coefficients, L comprises a lower triangular matrix, and the inverse of V is designated $V^{-1}$ such that $V^{-1}L^{-1}$ comprises a matrix of

receiver weighting coefficients.

143.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

144.    Defendant willfully blinded itself to the existence of the '592 patent and Defendant's infringement, but Defendant had actual knowledge of the '592 patent since at least the time of receiving the original complaint in this action.

145.    Defendant has also indirectly infringed one or more claims of the '592 patent by inducing others to directly infringe said claims.

146.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '592 patent by providing or requiring use of the Accused Products.

147.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '592 patent, including, for example, claim 1.

148.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

149.    Defendant is performing these steps, which constitute induced infringement with the

knowledge of the '592 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '592 patent.

150.    Defendant's inducement is ongoing.

151.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '592 patent.

152.    Defendant has contributed to the direct infringement of one or more claims of the '592 patent by their personnel, contractors, and customers.

153.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '592 patent, including, for example, claim 1.

154.    The special features constitute a material part of the invention of one or more of the claims of the '592 patent and are not staple articles of commerce suitable for substantial non-infringing use.

155.    Defendant's contributory infringement is ongoing.

156.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

157.    Defendant's direct infringement of one or more claims of the '592 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

158.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '592 patent.

159.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '592 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

160.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,398,408

161.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

162.    The USPTO duly issued U.S. Patent No. 7,398,408 (hereinafter, the "'408 patent") on July 8, 2008, after full and fair examination of Application No. 10/995,188 which was filed on November 24, 2004.  *See* '408 patent at p. 1.

163.    Integral Wireless owns all substantial rights, interest, and title in and to the '408 patent, including the sole and exclusive right to prosecute this action and enforce the '408 patent against infringers and to collect damages for all relevant times.

164.    The claims of the '408 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve the function and operation of computing

devices by providing a system for wirelessly waking computer devices out of reduced power or sleep mode over a wireless local area network.

165.    The written description of the '408 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

166.    Defendant has directly infringed one or more claims of the '408 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

167.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '408 patent, as detailed in **Exhibit F1** and **Exhibit F2** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,398,408).

168.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Sonim Bluetooth Devices, performs a method for waking a computing device over a wireless network comprising: broadcasting a signal containing a wake-up data sequence for at least one computing device over a wireless network, wherein broadcasting the signal comprises periodically broadcasting the signal over one or more wireless channels until either a first predetermined time period expires or a confirmation signal is received; receiving the broadcast signal at the at least one computing device, while that device is in a reduced power mode, wherein receiving comprises first entering a wake-up data sequence detection mode; scanning the received signal for a wake-up data sequence for that computing device, wherein scanning is performed until either the wake-up data sequence for that computing device is received or a second

predetermined time period expires; and restoring that computing device to a full power mode upon detection of a wake-up data sequence for that device and exiting the wake-up data sequence detection mode if the second predetermined time period expires.

169.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

170.    Defendant willfully blinded itself to the existence of the '408 patent and Defendant's infringement, but Defendant had actual knowledge of the '408 patent since at least the time of receiving the original complaint in this action.

171.    Defendant has also indirectly infringed one or more claims of the '408 patent by inducing others to directly infringe said claims.

172.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '408 patent by providing or requiring use of the Accused Products.

173.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '408 patent, including, for example, claim 1.

174.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused

Products in an infringing manner.

175.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '408 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '408 patent.

176.    Defendant's inducement is ongoing.

177.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '408 patent.

178.    Defendant has contributed to the direct infringement of one or more claims of the '408 patent by their personnel, contractors, and customers.

179.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '408 patent, including, for example, claim 1.

180.    The special features constitute a material part of the invention of one or more of the claims of the '408 patent and are not staple articles of commerce suitable for substantial non-infringing use.

181.    Defendant's contributory infringement is ongoing.

182.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

183.    Defendant's direct infringement of one or more claims of the '408 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

184.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '408 patent.

185.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '408 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

186.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,668,258

187.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

188.     The USPTO duly issued U.S. Patent No. 7,668,258 (hereinafter, the "'258 patent") on February 23, 2010, after full and fair examination of Application No. 11/411,619 which was filed on April 26, 2006.  *See* '258 patent at p. 1.

189.     Integral Wireless owns all substantial rights, interest, and title in and to the '258 patent, including the sole and exclusive right to prosecute this action and enforce the '258 patent against infringers and to collect damages for all relevant times.

190.     The claims of the '258 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity.  Rather, as just one example, the claimed invention includes inventive components that improve the function and operation of systems and methods for data transmission by providing methods and systems for transmitter diversity expansion, including steps and modules for applying a number of data streams (K) to a larger number of antennas (N).  This is performed by applying each of the data streams to a single base antenna, such that K data streams are applied to K base antennas, and by shifting and combining the K data streams to produce N-K data streams to apply to N-K extension antennas.

191.    The written description of the '258 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

192.    Defendant has directly infringed one or more claims of the '258 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

193.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 7 of the '258 patent, as detailed in **Exhibit G** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,668,258).

194.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Sonim 802.11n  Devices, provides a system comprising: a signal processor configured to receive a first set of data streams, and generate a second set of one or more data streams based on a combination of the first set of data streams, wherein the combination of the first set of data streams is the product of a matrix multiplication of the data in

the first set of data streams with a unitary matrix; and a plurality of antennas, wherein each antenna is configured to transmit a corresponding one data stream of the first and second sets of data streams.

195.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

196.    Defendant willfully blinded itself to the existence of the '258 patent and Defendant's infringement, but Defendant had actual knowledge of the '258 patent since at least the time of receiving the original complaint in this action.

197.    Defendant has also indirectly infringed one or more claims of the '258 patent by inducing others to directly infringe said claims.

198.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '258 patent by providing or requiring use of the Accused Products.

199.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '258 patent, including, for example, claim 16.

200.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused

Products in an infringing manner.

201.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '258 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '258 patent.

202.    Defendant's inducement is ongoing.

203.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '258 patent.

204.    Defendant has contributed to the direct infringement of one or more claims of the '258 patent by their personnel, contractors, and customers.

205.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '258 patent, including, for example, claim 16.

206.    The special features constitute a material part of the invention of one or more of the claims of the '258 patent and are not staple articles of commerce suitable for substantial non-infringing use.

207.    Defendant's contributory infringement is ongoing.

208.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

209.    Defendant's direct infringement of one or more claims of the '258 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

210.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '258 patent.

211.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '258 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

212.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,586,424

213.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

214.     The USPTO duly issued U.S. Patent No. 7,586,424 (hereinafter, the "'424 patent") on September 8, 2009, after full and fair examination of Application No. 11/422,316 which was filed on June 5, 2006.  *See* '424 patent at p. 1.

215.     Integral Wireless owns all substantial rights, interest, and title in and to the '424 patent, including the sole and exclusive right to prosecute this action and enforce the '424 patent against infringers and to collect damages for all relevant times.

216.     The claims of the '424 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity. Rather, as just one example, the claimed invention includes inventive components that improve coding audio and/or video data by coding data symbol using an exponent and a residual, in which the exponent is coded using a variable length code, such as but not limited to a Huffman code or a Golomb code. The variable length code may be adaptive and may code according to probabilities or frequencies of occurrence of the data symbol.

217.    The written description of the '424 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

218.    Defendant has directly infringed one or more claims of the '424 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

219.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '424 patent, as detailed in **Exhibit H** to this Complaint (Evidence of Use Regarding Infringement of U.S. Patent No. 7,586,424).

220.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the Sonim HEVC Devices, performs a method comprising: coding a data symbol using a code comprising an exponent value and a residual value; coding the residual value using a fixed-length binary code; and coding the exponent value using a variable length code that is based on a frequency of occurrence of the exponent value.

221.    Defendant has a policy or practice of not reviewing the patents of others, including

instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

222.    Defendant willfully blinded itself to the existence of the '424 patent and Defendant's infringement, but Defendant had actual knowledge of the '424 patent since at least the time of receiving the original complaint in this action.

223.    Defendant has also indirectly infringed one or more claims of the '424 patent by inducing others to directly infringe said claims.

224.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '424 patent by providing or requiring use of the Accused Products.

225.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '424 patent, including, for example, claim 1.

226.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

227.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '424 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would

infringe the '424 patent.

228.    Defendant's inducement is ongoing.

229.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '424 patent.

230.    Defendant has contributed to the direct infringement of one or more claims of the '424 patent by their personnel, contractors, and customers.

231.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '424 patent, including, for example, claim 1.

232.    The special features constitute a material part of the invention of one or more of the claims of the '424 patent and are not staple articles of commerce suitable for substantial non-infringing use.

233.    Defendant's contributory infringement is ongoing.

234.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

235.    Defendant's direct infringement of one or more claims of the '424 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

236.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '424 patent.

237.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue

to suffer this harm by virtue of Defendant's infringement of one or more claims of the '424 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

238.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

239.    Integral Wireless hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

240.    Integral Wireless requests that the Court find in its favor and against Defendant, and that the Court grant Integral Wireless the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '031 patent, the '878 patent, the '283 patent, the '592 patent, the '408 patent, the '258 patent, and the '424 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.   Judgment that Defendant account for and pay to Integral Wireless all damages to and costs incurred by Integral Wireless because of Defendant's infringing activities and other conduct complained of herein;

d.   Judgment that Defendant's infringements be found willful as to the '031 patent, the '878 patent, the '283 patent, the '592 patent, the '408 patent, the '258 patent, and the '424 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Integral Wireless its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>May 30, 2025</u>                    Respectfully submitted,

By: */s/ James F. McDonough, III*

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff INTEGRAL WIRELESS TECHNOLOGIES LLC*

\* Admitted to the Eastern District of Texas

**List of Attachments**

- Civil Cover Sheet

**List of Exhibits**

A.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,653,031

B.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,483,878

C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,310,537

D.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,292,283

E.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,548,592

F.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,398,408

G.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,668,258

H.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,586,424

**<u>List of Supporting Links</u>**

1. U.S. Patent No. 7,653,031, USPTO,
   <u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7653031</u>.

2. U.S. Patent No. 7,483,878, USPTO,
   <u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7483878</u>.

3. U.S. Patent No. 7,310,537, USPTO,
   <u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7310537</u>.

4. U.S. Patent No. 7,292,283, USPTO,
   <u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7292283</u>.

5. U.S. Patent No. 7,548,592, USPTO,
   <u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7548592</u>.

6. U.S. Patent No. 7,398,408, USPTO,
   <u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7398408</u>.

7. U.S. Patent No. 7,668,258, USPTO,
   <u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7668258</u>.

8. U.S. Patent No. 7,586,424, USPTO,
   <u>https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7586424</u>.